IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SHANE ANDREW CASSELL,<br><br>Plaintiff,<br>v.<br><br>SKYWEST, INC. d/b/a SKYWEST AIRLINES,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER PARTIALLY GRANTING AND PARTIALLY DENYING PLAINTIFF AND DEFENDANT'S MOTIONS IN LIMINE**<br><br>Case No. 2:19-CV-00149 JNP-DAO<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Before the court are motions in limine filed by Plaintiff Shane Andrew Cassell ("Cassell") and Defendant SkyWest, Inc. ("SkyWest") in anticipation of their upcoming trial. ECF Nos. 84-87, 95, 99-103. This case arises from Cassell's claim that SkyWest violated § 701(j) of Title VII by failing to hire him due to his religion, failing to offer reasonable accommodations for his religious beliefs, and retaliating against him because of his religion. Oral argument on these motions was held on January 24, 2023. For the reasons presented herein, the court DENIES Defendant's motions numbered one, two, four, five, six, eight, and nine, GRANTS Defendant's motion numbered seven, DENIES Plaintiff's motion numbered two, and GRANTS Plaintiff's motion numbered three.[1]

---

[1] Defendant did not submit a third motion in limine and Plaintiff withdrew his first motion in limine. For clarity, the numbering of the sections in this decision matches the numbering used by each party in filing their motions. This means that the decision skips Defendant's third motion and Plaintiff's first motion.

## ANALYSIS

The court first examines and decides Defendant's motions in limine. It then turns to Plaintiff's motions in limine.

## I.      DEFENDANT'S MOTIONS IN LIMINE

## 1.   Motion to Strike Alonzo Gaskill's Expert Report and Exclude his Testimony

Pursuant to Federal Rules of Evidence 702 and 403, SkyWest seeks to exclude the expert report and testimony of Cassell's expert witness Alonzo Gaskill ("Gaskill"). Gaskill is a professor of world religions at Brigham Young University. ECF No. 84-2 at 3. He plans to explain the beliefs and Sabbath observance practices of Seventh-day Adventists. *Id*. The court denies Defendant's request to exclude Gaskill's report and testimony.

Under Rule 702, a court may properly admit expert testimony if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). "In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony is within the juror's common knowledge and experience, and whether it will usurp the juror's role of evaluating a witness's credibility." *United States v. Garcia*, 635 F.3d 472, 476-77 (10th Cir. 2011). SkyWest argues that the court must exclude Gaskill's expert testimony under Rule 702 because his opinions will not assist the jury in understanding the evidence presented in the case or determining a fact in issue. The court disagrees.

From the face of Gaskill's expert report, it appears he will testify that Seventh-day Adventist doctrine is unique among Christian traditions in that strict Sabbath observance is central to the faith's teachings. While other religious groups encourage their members to observe the Sabbath as an important spiritual practice, according to Gaskill, Seventh-day Adventists believe

that Sabbath observance is a crucial element of salvation.[2] The expert presentation of this fact will assist the jury in interpreting the evidence presented during trial because if jurors do not understand the strict nature and specific rules of Seventh-day Adventists' Sabbath requirements they may not fully grasp the basic reason Plaintiff believed that avoiding work on Saturday was non-negotiable. Additionally, an expert's presentation will resolve any confusion regarding when exactly the Sabbath starts and ends (a matter on which the world's many Sabbath observing religions disagree). Establishing this fact is essential because it clarifies why Plaintiff was forced to resign during his training in 2016 and why Plaintiff's chart of first officer leave hours may be seriously flawed.[3]

---

[2] In relevant part, Gaskill's report states:

> While the majority of Christian denominations today do not have a strongly articulated "Sabbath doctrine," even those who continue to place an emphasis on Sabbath observance as a commandment do not typically teach that it is the most important of God's commandments, nor do they teach that occasional Sabbath breaking will cause one to lose one's salvation. Most denominations of Christianity and Judaism hold that commemoration of the Sabbath is a good and holy act that has the potential to draw one closer to God—but the vast majority of their practitioners either don't commonly commemorate it or feel that occasional lapses are minor offenses in the eyes of God.

> The Seventh-day Adventist position is significantly different on this matter. To fail to consistently and faithfully observe the Sabbath (1) constitutes a grievous offence and most significant sin. (2) To work on the Sabbath is to take upon oneself the "mark of the Beast," thereby aligning oneself with Satan and, by this means, rejecting Christ. And (3) neglecting to fully observe the Sabbath severs one's relationship with God, thereby placing him or her in a damnable position, wherein salvation is forfeited.

ECF No. 119-1 at 9.

[3] See discussion of Defendant's eighth motion in limine for further analysis of the first officer chart's potential flaws.

It also appears that Gaskill's testimony will not explain facts "already within the juror's common knowledge and experience." *United States v. Garcia*, 635 F.3d at 476-77. Defendant claims that only common knowledge and experience is required to understand Sabbath worship because jurors will be able to simply listen to Cassell's straightforward testimony about his own beliefs regarding the issue. The problem with this argument is that Cassell is not the only individual whose experience serving as a Seventh-day Adventist pilot at SkyWest is at issue. Plaintiff will offer evidence that Stephen Horne ("Horne") and Michael Wahlen ("Wahlen"), both Seventh-day Adventists employees, were generally able to perform their jobs without working on the Sabbath. An expert will be helpful to explain the common beliefs of these individuals and enable Cassell to make the case that their experiences at SkyWest would have been analogous to his had SkyWest hired him.

Moreover, while jurors might understand what a "Sabbath" is through their own personal experiences, few will have ever encountered the specific type of Sabbath observed by Seventh-day Adventists. Indeed, some jurors may not have even heard of the Seventh-day Adventist Church. Absent expert clarification, jurors may inject their own prior assumptions about the requirements and importance of Cassell's Sabbath into their deliberations.

In addition to arguing that Gaskill will present common knowledge, SkyWest claims that, insofar as Gaskill testifies about whether Cassell's beliefs are sincere or not, he will "usurp the juror's role of evaluating a witness's credibility." *Id*. The court tentatively agrees that it should exclude Gaskill's testimony insofar as he argues that Cassell's beliefs are sincere. But Plaintiff has clarified that it does not plan to ask Gaskill to testify as to this issue. Indeed, both parties agree that Cassell's "sincerity" is not disputed. As such, the court sees no need to enter an order barring such testimony. Ultimately, under Rule 702, Gaskill's testimony and expert report are admissible.

Even if Gaskill's opinions are admissible under Rule 702, SkyWest argues that they do not pass muster under Rule 403. It maintains that Gaskill will present testimony that is highly prejudicial, will confuse the issues, might mislead the jury, could waste time, and will needlessly present cumulative evidence. *See* Fed. R. Evid. 403 (listing potential causes of prejudice that can lead to exclusion of relevant evidence). The court dispatches each potential source of prejudice in turn.

According to SkyWest, Gaskill "would instruct the jury that Mr. Cassell's religious beliefs are defensible in comparison to Adventist beliefs and those of other religions." ECF No. 84 at 9. In SkyWest's opinion, this hypothetical testimony is "highly prejudicial because Mr. Gaskill's qualifications would lend weight to an inquiry that is not relevant to Title VII or the issues that remain in this case."[4] ECF No. 84 at 9. This argument is flawed because it is based upon a groundless assumption that Gaskill's testimony will be offered to defend Cassell's beliefs. The parties fully agree that the question of whether Cassell's beliefs are defensible in comparison to those of Seventh-day Adventists and those of other religious groups is not at issue.

SkyWest also argues that Gaskill's testimony would "place[] an inappropriate layer of complexity and value comparison between Cassell's belief and other religions, something that can only confuse the jury . . . ." *Id*. As previously noted, Gaskill's testimony is valuable because it would actually address any faulty analogy between the beliefs of Seventh-day Adventists and the beliefs of other religions. Gaskill's testimony would offer clarity, not confusion. Additionally, the court sees no indication that Gaskill would seek to make a "value comparison" between different religions, i.e., argue that one set of beliefs is better than another.

---

[4] SkyWest's argument, here, seems to blur the lines between Federal Rules of Evidence 401 and 403.

SkyWest next argues that "expert opinion would waste time and be cumulative." *Id*. The court disagrees. For the reasons stated above, Gaskill's testimony would uniquely and efficiently educate jurors on the contours of Cassell, Horne, and Wahlen's beliefs.

SkyWest, additionally, asserts that "the only explanation for why Plaintiff seeks to use Mr. Gaskill is to make an irrelevant, improper, and prejudicial appeal to the jury." *Id*. at 10. Specifically, it claims that "Plaintiff seeks to gain an advantage with the jury by employing an 'expert' in religion who" is a Latter-day Saint ("LDS"), like many members of the juror pool in Utah. *Id*. Defendant believes that "several jury members will automatically deem [Gaskill's] testimony credible because they share the same religious convictions." This argument is severely flawed. LDS jurors are more than capable of fairly weighing the testimony of a member of their own religion. Frankly, to suggest otherwise during briefing in a religious discrimination case is bold.

Finally, SkyWest asserts that Gaskill's testimony is prejudicial because it "seems intended (1) to convince potential Latter-day Saint jurors, or other jurors that observe a Sabbath, that Mr. Cassell's Sabbath observance is stricter than theirs, and therefore deserves more deference in the Title VII analysis, and (2) to put a 'plus factor' on Mr. Cassell's beliefs so that the jury believes the rights of other SkyWest employees should be subordinated." *Id*. at 10-11. SkyWest's first argument is confusing. It does not logically follow that a juror must believe that stricter observance deserves special treatment. Even if the court were convinced of this logic, if it were to apply SkyWest's argument consistently, it would have to prevent plaintiffs in other religious discrimination cases from educating jurors on their beliefs whenever they are particularly strict. This cannot be right. SkyWest's second argument is also faulty. Nowhere does Plaintiff argue that the rights of other SkyWest employees should be subordinate to those of Seventh-day Adventists.

6

In sum, Gaskill's expert testimony is admissible under Rules 702 and 403. Thus, the court denies this motion in limine.

### 2. Motion Re Admitted Reasonableness of Accommodation

Pursuant to Federal Rules of Evidence 401 and 403, SkyWest asks the court to exclude any testimony or evidence that the religious accommodation offered to Cassell in 2016 was unreasonable and instruct the jury that it is undisputed and admitted by Cassell that SkyWest's offered accommodation was reasonable for purposes of Title VII. The court declines to exclude any testimony or evidence that the 2016 accommodation was unreasonable and will not instruct the jury that SkyWest's 2016 accommodation was reasonable under Title VII.

At trial, Defendant will attempt to show that it provided Cassell a reasonable accommodation during the hiring process in 2017 by establishing that a similar accommodation that it offered in 2016 was reasonable.[5] It appears that SkyWest is attempting to strengthen its case regarding the reasonability of the 2017 accommodation by asking the court to instruct the jury that the reasonability of the 2016 accommodation, as a matter of law, is not up for debate. SkyWest makes two key arguments to support its request—each based upon statements in the court's order denying summary judgment.

First, the court's order denying summary judgment noted that Plaintiff, in his briefings, "[a]gree[d] that the 2016 accommodation tools offered by SkyWest [were] reasonable under the facts of this case." ECF No. 53 at 48 n.10. The court cited this admission to make the point that, going forward, its order would focus not "on whether the proposed accommodation was reasonable but rather on whether SkyWest made the reasonable accommodation available to Cassell." ECF

---

[5] The parties disagree about the nature of the accommodations SkyWest offered Cassell in 2017.

No. 63 at 9-10. SkyWest argues that Plaintiff's statement is a judicial admission that bars him from claiming, at trial, that the 2016 accommodation was unreasonable.

A judicial admission is an "express waiver made by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). The court retains discretion over whether to hold parties to judicial admissions, as statements made in legal briefs or memoranda are not part of the trial record. *See, e.g., Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.*, 607 F.2d 885, 906-07 (10th Cir. 1979). Here, Plaintiff did not *expressly* state that he was waiving his right to contest the issue of reasonability at trial. While the footnote in Plaintiff's memorandum states that "Cassell agrees that the 2016 accommodation tools offered by SkyWest was reasonable," Plaintiff plausibly argues that he made this concession solely for purposes of the motion for summary judgment because to contest such an issue at that juncture was neither strategic nor relevant to responding to SkyWest's motion.[6] Cassell's footnote was not artfully worded and the court refuses to read too deeply into its meaning to bar him from introducing the position he wishes to advance at trial.

Second, in footnote three of its order denying summary judgment, the court reviewed several relevant cases to determine that it was "bound by precedent holding that voluntary shift swapping is a reasonable accommodation in light of a neutral union-mandated seniority system." ECF No. 63 at 10 n.3 (cases examined included *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 79 (1977) (hereinafter *TWA*); *Tabura v. Kellogg USA*, 880 F.3d 544 (10th Cir. 2018); *Thomas*

---

[6] Plaintiff believed, at the time of his resignation in 2016, that there was no need to "challenge the reasonableness of the accommodation as he believed the tools set forth in the 2016 memorandum would have allowed him to avoid Sabbath work." ECF No. 53 at ¶ 57. Whether these tools were actually effective only became an issue in Plaintiff's mind in 2017. If the 2016 accommodation is not actually effective at preventing a conflict (SkyWest's 2017 position), Plaintiff does not believe that the 2016 accommodation was reasonable.

*v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149 (10th Cir. 2000); *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317 (11th Cir. 2007)). Defendant argues that this discussion required that the court take the issue of the 2016 accommodation's reasonability out of the hands of the jury. Plaintiff responds that SkyWest ignores *Tabura's* statement that "an accommodation will not be reasonable if it only provides Plaintiffs an opportunity to avoid working on some, but not all, Saturdays." *Tabura*, 880 F.3d at 550 (emphasis added) (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986)). According to Cassell, the *Tabura* language means that the 2016 accommodation is not reasonable because SkyWest claims that it would have required that Cassell work on the Sabbath.

Cassell misreads the caselaw on this issue. The court stands by its prior determination that voluntary shift swapping is a reasonable accommodation in light of a neutral union-mandated seniority system. In *Tabura*, the Tenth Circuit distinguished the facts of the case from those of *TWA* in a footnote clarifying that "Title VII's requirement that an employer reasonably accommodate an employee's religious practices does not obligate the employer to violate a collective bargaining agreement." *Tabura*, 880 F.3d at 555 n.11 (citing *TWA*, 432 U.S. at 83 n.14). In other words, the range of potential reasonable accommodations was much wider in *Tabura* than it was in *TWA* because there was "no collective bargaining agreement that restricts the accommodations [the employer could] offer." *Id*. When an employer is not bound by a collective bargaining agreement, an accommodation forcing an employee to work on some Sabbaths may not be reasonable, but when the employer is bound by a collective bargaining agreement, that same neutral seniority-based accommodation is reasonable. This leads to the uncomfortable conclusion that religious protections available to union members subject to a seniority system are severely

curtailed compared to the protections afforded to those who are not union members.[7] Such a finding also stands in significant tension with recent law from the Supreme Court stating that "it is no response that the [employer's] failure to hire was due to an otherwise neutral policy." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015). Although the court has significant questions about the wisdom and logical cohesion of current caselaw, it will not deviate from the clear holdings in both *TWA* and *Tabura*.[8]

But this does not require the court to instruct the jury as to the reasonableness of the accommodation SkyWest offered Cassell in 2016. First, the reasonableness of the 2016 accommodation is not an element of Plaintiff's Title VII claim. The court will only ask jurors to rule on the reasonability of the alleged offer of the 2017 accommodation. The reasonableness of the 2016 accommodation is purely a sideshow issue that is not relevant to this determination.

---

[7] The *TWA* Court's reasoning for this seeming unfairness is derived from 42 U.S.C. § 2000e-2(h), which states that "it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system . . . provided that such differences are not the result of *an intention to discriminate* because of race, color, religion, sex, or national origin . . . ." According to the Court, "the unmistakable purpose of § 703(h) was to make clear that the routine application of a bona fide seniority system would not be unlawful under Title VII." *TWA*, 432 U.S. at 82 (citing *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977)). "Thus, absent a discriminatory purpose, the operation of a seniority system cannot be an unlawful employment practice even if the system has some discriminatory consequences." *Id*. Here, Plaintiff does not allege that the seniority system was created or applied with an intent to discriminate in 2016. As in *TWA*, "[t]he seniority system was not designed with the intention to discriminate against religion nor did it act to lock members of any religion into a pattern wherein their freedom to exercise their religion was limited. It was coincidental that in plaintiff's case the seniority system acted to compound his problems in exercising his religion." *Id*. And, in 2017, Plaintiff argues that the seniority system was *used as an excuse* not to hire him when it could have accommodated his needs. If Plaintiff proves these allegations, this is an impermissible use of a union negotiated seniority system.

[8] The Supreme Court seems to recognize that *TWA* may be out of step with the current direction of its religious freedoms caselaw and has take up two of its holdings for review in *Groff v. DeJoy*, a case that it will hear argument on in April 2023. No. CV 19-1879, 2021 WL 1264030 (E.D. Pa. Apr. 6, 2021), *aff'd*, 35 F.4th 162 (3d Cir. 2022).

Second, a jury instruction regarding the reasonableness of the 2016 accommodation could confuse and prejudice jurors as they determine whether the 2017 accommodation was reasonable. An instruction that the 2016 accommodation was reasonable would likely prompt the jury to embark on an unnecessary fact-finding mission to discover what exactly the 2016 accommodation required. Once the jury completes this mission, it would likely then unnecessarily compare and contrast the 2016 accommodation with the 2017 accommodation. Because the legality of the 2016 accommodation is not at issue in this case, a more reasonable path forward is to simply instruct the jury on the legal definition of a reasonable accommodation and ask it to determine the reasonableness of the 2017 accommodation. This instruction would at no point reference the 2016 accommodation.[9]

When it comes to Defendant's request to exclude evidence and testimony regarding the 2016 accommodation request, one could argue that because the reasonableness of the 2016 accommodation is not relevant to Plaintiff's Title VII claim, evidence and testimony pertaining to it should be excluded. This is not so. Evidence that tends to show that the 2016 accommodation is not reasonable is likely the same evidence that Plaintiff will use to answer the relevant question of whether the 2017 accommodation is reasonable. Thus, the court cannot exclude it.

Ultimately, the parties should work together to craft an instruction informing jurors of the reasonableness standard under *TWA* and *Tabura* so they are fully informed of the relevant law[10]

---

[9] The court will, however, clarify that Plaintiff brings no independent claim for a 2016 violation of Title VII.

[10] The parties should also stay abreast of the Supreme Court's upcoming decision in *Groff v. DeJoy*, as it has the potential to shake the foundation of this body of law. 35 F.4th 162. It is worth noting that this court reserves the right to reformulate its orders on these motions in limine pending the outcome of this case.

as they decide whether SkyWest offered Cassell a reasonable accommodation in 2017.[11] 432 U.S. 63; 880 F.3d 544.

### 4. Motion Re 2016 Resignation and Pilot Training

Pursuant to Rules 401 and 403, SkyWest seeks to exclude all evidence and argument regarding Cassell's employment and resignation in 2016 and his request for accommodations relating to pilot training, other than for the purpose of providing background information and context for its 2017 decision not to hire Cassell. SkyWest also seeks an instruction explaining that the jury cannot consider evidence and testimony on these subjects as proof of its violation of Title VII. To support these requests, SkyWest argues that evidence of the events of 2016 is irrelevant and prejudicial. The court disagrees and both declines to exclude this evidence or provide SkyWest's proposed jury instruction.[12]

Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Here, evidence of Cassell's employment by SkyWest, and subsequent resignation, as well as his requests for accommodations in 2016 are clearly relevant to Plaintiff's claim that he faced religious discrimination in 2017.

---

[11] The parties represented at oral argument that if the court granted Defendant's second motion in limine and provided an instruction that the 2016 accommodation was reasonable, the question of whether SkyWest would have suffered an undue hardship if it had hired Cassell with the accommodation would not become an issue at trial. The court disagrees. As made clear in its order denying summary judgment, if the court assumes that both the 2016 and 2017 accommodations were reasonable, it does not logically follow that SkyWest offered the accommodations to Plaintiff. ECF No. 63 at 9-11. If a jury finds that SkyWest did not offer the accommodations to Plaintiff, SkyWest may still attempt to escape liability by showing that providing an offer of reasonable accommodations would have posed an undue hardship.

[12] To resolve any potential confusion, the court requests that the parties propose a jury instruction simply clarifying that Plaintiff does not seek to recover damages arising out of his resignation in 2016.

First, to build a prima facie case of discrimination, Cassell must show that he informed SkyWest of his deeply held religious belief and that this belief conflicted with a job requirement. *See Tabura*, 880 F.3d at 549. Evidence from 2016 assists Cassell in meeting this element. It can show that, even at this early stage of his relationship with SkyWest, he had informed the company that he required an accommodation to avoid working on the Sabbath and that SkyWest denied this request, instead proposing a procedure to ensure that he would be able continue his work without harming the company. In particular, the 2016 Memorandum between SkyWest and Plaintiff could serve as relevant evidence to establish Plaintiff's belief and this belief's conflict with his work.[13]

Additionally, the events of 2016 are relevant to Cassell's failure to hire claim. A jury could well believe that, because SkyWest learned of Cassell's beliefs and had to accommodate them in 2016, it decided not to hire him in 2017 in order to avoid the inconvenience of providing the accommodation again. A jury could also find that SkyWest chose not to hire Cassell in retaliation for his accommodations request in 2016. In other words, the events of 2016 could have provided a motive for SkyWest's alleged discrimination. In short, the events of 2016 are clearly relevant to Plaintiff's 2017 claims.

Even if the 2016 evidence is relevant, SkyWest still argues that it is not admissible because "its probative value is substantially outweighed by a danger of . . . confusing the issues." Fed. R. Evid. 403. The court disagrees. It will instruct the jury that Plaintiff only seeks damages based on SkyWest's alleged retaliation against Cassell, failure to hire Cassell in 2017, and failure to provide accommodations to Cassell in 2017. The court can also instruct the jury that it may not hold

---

[13] The "2016 Memorandum" referred to throughout this order is the memorandum agreement dated October 27, 2016 describing an agreed upon accommodation for Cassell prior to his resignation. ECF No. 120-1. It describes the accommodation as follows: "Options include pursuit of schedule changes as defined by company and departmental resources (e.g. drop/trade shift, bid for desired work assignments, domicile staffing/available shirts)." *Id*.

SkyWest liable for its conduct in 2016, but that it may use evidence from 2016 to determine whether SkyWest is liable for its 2017 conduct. This is sufficient clarification to avoid juror confusion.

But SkyWest proposes a different set of instructions. It asks the court to instruct the jury that it may not consider evidence from 2016 for the purpose of determining whether SkyWest violated Title VII and that it must only use this evidence as background to understand the events of 2017. Rather than reduce confusion, this instruction would further complicate matters for the jury. SkyWest fails to explain how a jury could determine what constitutes using evidence as background versus using it to determine liability.

With an instruction clarifying that Plaintiff does not seek damages for SkyWest's 2016 conduct, there are no grounds to conclude that the unquestionably relevant 2016 evidence is confusing or prejudicial. Accordingly, the court declines to exclude this evidence at trial or provide SkyWest's proposed instruction.

### 5. Motion to Exclude Testimony of Anita Spencer

SkyWest seeks to exclude the testimony of Anita Spencer ("Spencer") pursuant to Federal Rules of Evidence 403 and 611. It argues that her testimony is merely cumulative and would be offered only to embarrass a witness. The court declines to exclude this evidence.

Spencer is the Director of Crew Support for SkyWest. ECF No. 122-2 at 8:12–25. She oversees crew payroll and pilot scheduling. *Id*. at 9:9-10:14. Spencer was unaware of either Cassell or this litigation until the scheduling of her deposition. *Id*. at 68:5–7. During her deposition, in which she appeared in a personal capacity, Spencer testified about SkyWest's schedule bidding system (PBS), SkyWest's shift swapping and dropping system (SkedPlus+), SkyWest's seniority system, the SkyWest Airlines Pilots Association ("SAPA"), and the procedure for when a pilot does not show up for a shift. *See generally id*. at 36:17-25, 49:18-51:1, 62:22-66:3.

14

SkyWest claims that when asked about pilot scheduling, Spencer deferred to her direct report, Steven Spagnolo ("Spagnolo"), who holds the position of Manager of Crew Support Resources and has more "hands on" experience with pilot scheduling. ECF No. 122-2 at 16:1-13; ECF No. 101 at Ex. F. According to SkyWest, Spagnolo was deposed on the same topics as Spencer, but as a corporate representative rather than in his personal capacity. *See generally* ECF No. 122-1 at 4:24-25, 100:23-101:21, 123:1-5. Additionally, Roy Glassey ("Glassey"), Chief Pilot & Director of Operations for SkyWest, was deposed twice—once as a corporate representative, ECF No. 101 at Ex. C, and once in his personal capacity, ECF No. 101 at Ex. D. Glassey discussed the same topics as Spagnolo and Spencer in his depositions. *See id*. Moreover, Todd Emerson ("Emerson") was deposed in his personal capacity. ECF No. 122-4. He likewise spoke about similar topics. *See id*.

Under Rule 403, the court has the discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . undue delay, wasting time, or needlessly presenting cumulative evidence." Under Federal Rule of Evidence 611, the court also has "reasonable control over the mode and order of examining witnesses and presenting evidence" to "avoid wasting time" and "protect witnesses from harassment or undue embarrassment."

SkyWest acknowledges that Spencer can testify about PBS, SkedPlus+, SkyWest's seniority system, SAPA, and what occurs when a pilot does not show up for a shift, but only "from a very high level—as the department head" ECF No. 101 at 6. It observes that in her deposition she was unable to respond to many questions on these topics—all of which different witnesses with more direct knowledge would have less difficulty answering. SkyWest therefore asks the court to exclude Spencer's testimony as cumulative since, "[o]ther more qualified and experienced witnesses . . . will be testifying at trial on each of these topics . . . ." *Id*. It also asks the court to

exclude this testimony under Rule 611 because it is concerned that Plaintiff intends to ask questions that will embarrass Spencer, and by extension, SkyWest.

The court declines to exclude Spencer's testimony at this time because SkyWest's assertion that her testimony will be cumulative and embarrassing is merely speculative. Cassell has not disclosed what testimony he intends to solicit from Spencer and how that testimony will compare with the testimony of other witnesses.[14] Thus, the court is left guessing how Spencer will be used by Plaintiff or whether any testimony elicited from her will be cumulative. The Rules of Evidence generally disfavor such a speculative request to exclude broad categories of evidence based on a mere hunch that testimony might be prejudicial. Generally, "[o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) (commonly cited by district courts in the 10th Circuit. *See, e.g.*, *Owen v. O'Reilly Auto Enterprises, LLC*, No. 2:16-CV-01102, 2017 WL 5499779, at *3 (D. Utah Nov. 15, 2017)). Indeed, it is a well settled principle that when a party seeks exclusion of a whole category of evidence, "it is extremely difficult, if not impossible," to determine whether the evidence "is irrelevant, unfairly prejudicial, or potentially misleading." *Hipwell v. Air & Liquid Systems Corp.* 2022 WL 3999955 (D. Utah 2022). Moreover, each side has the right to present its case through the witnesses it chooses. Defendant is not entitled to decide which witnesses the Plaintiff may call to present its case. If SkyWest wishes to call the other witnesses in its own case to rebut Cassell, that is its prerogative.

---

[14] Indeed, Plaintiff maintains that he is not planning to call Spagnolo; one of the main individuals with knowledge overlapping that of Spencer. ECF No. 122 at 6.

As to SkyWest's argument for exclusion under Rule 611 specifically, it is hardly embarrassing or prejudicial for a witness employed by a company to indicate that she does not know the answer to all questions about company policy or operations. This is a common and acceptable reason that parties call witnesses. Perhaps, for instance, Plaintiff has a legitimate and strategic reason for demonstrating the lack of knowledge of a company's management. Ultimately, the court declines to exclude Spencer's testimony.

### 6. Motion to Exclude Testimony of and Evidence Re Stephen Horne and Michael Wahlen

SkyWest seeks to exclude the testimony of Horne and Wahlen, as well as the following pieces of evidence involving those individuals: (1) Wahlen's request for religious accommodation and the resulting memorandum of agreement, (2) Horne and Wahlen's work histories, (3) Horne and Wahlen's declarations, and (4) the telephone recording between Wahlen and SkyWest's crew scheduling service. SkyWest argues that this testimony and evidence is irrelevant to the material facts at issue in the present case and should be excluded under Rule 401. It also argues that this testimony and evidence is prejudicial and should be excluded under Rule 403. The court disagrees.

Horne is a practicing Seventh-day Adventist whom SkyWest employed as a pilot from 2007 to 2018.  ECF No. 63 at 4. During this period, Horne successfully used SkyWest's seniority-based bidding system and tools to add, drop, and swap shifts to avoid working on the Sabbath. ECF No. 103-2 at 21:20-22:18. This bidding and add, drop, swap system was the same system that SkyWest offered Cassell as an accommodation in the 2016 Memorandum. On December 5, 2016, SkyWest received a request for religious accommodations from Wahlen, a different Seventh-day Adventist pilot employed by SkyWest. ECF No. 53-2 at 1271, 1273. SkyWest quickly offered Wahlen the same accommodation that it had offered Cassell. *Id*. Cassell believes that Horne and Wahlen both substantially avoided Sabbath conflicts through use of the seniority-based bidding

17

system and tools to add, drop, and swap shifts during their employment with SkyWest. In fact, he claims to have spoken to Horne about his experience with this system before reapplying to work at SkyWest in 2017 and relied on this discussion in making his decision to re-apply.

SkyWest argues that Wahlen and Horne's testimony is irrelevant. The court is unconvinced for several reasons. First, Wahlen's and Horne's testimony supports "Cassell's claim that he reasonably believed he could use the tools identified in the 2016 Memorandum to avoid Sabbath work . . . ." ECF No. 123 at 3. This is a material issue because it speaks to the central question of whether or not Cassell rejected SkyWest's accommodation offer in 2017. ECF No. 123 at 3. If Cassell believed he could successfully avoid Sabbath work using the tools offered by SkyWest, then telling the SkyWest interviewer that he would not work on the Sabbath might not be a rejection of the accommodation arrangement. On the other hand, if Cassell did not believe he could avoid working on the Sabbath under the accommodation arrangement, then Cassell's reiteration that he would not work on the Sabbath could be viewed as a repudiation of the offered accommodation. Wahlen and Horne's testimony and evidence directly address this issue. Horne's testimony could explain that he specifically told Cassell, prior to Cassell's re-application to SkyWest, that he was able to use the accommodations from the 2016 Memorandum to avoid working on the Sabbath. Cassell claims to have relied on this information when he told SkyWest, in a letter dated June 29, 2017, that he was not seeking a guarantee of a Sabbath free schedule, but simply wished to use the tools set forth in the 2016 Memorandum to avoid Sabbath work. Similarly, Wahlen may testify that he avoided working on the Sabbath. This testimony would tend to show that Cassell was correct in believing that he could have avoided working on the Sabbath without a guarantee from SkyWest, which could help prove that Cassell's belief was reasonable.

This court is also persuaded that Wahlen and Horne's testimony is highly relevant because it heavily relied on their experiences in reaching its decision to deny summary judgment. For instance, in analyzing whether SkyWest gave Cassell the opportunity to use the 2016 accommodations in 2017, the court found that evidence from Wahlen and Horne indicated that it was possible Cassell could have used the 2016 accommodation to avoid working on the Sabbath and, thus, that SkyWest's demand that Cassell commit to working on the Sabbath could impose a discriminatory barrier to exercising his reasonable accommodations. ECF No. 63 at 12, 14. The court also noted that a jury could use evidence from Wahlen and Horne to determine that SkyWest could have profited off Cassell over the term of his employment because no other Seventh-day Adventist was forced to prematurely quit the airline because of Sabbath observance.[15] *Id.* at 18.

Even if this testimony is relevant, SkyWest argues that failing to exclude it at trial would "unduly prejudice and confuse the jury as to what information properly factors into the reasonable accommodation analysis." ECF No. 103 at 9. The court disagrees. SkyWest seems to assume that Cassell will use Horne and Wahlen's evidence to argue that SkyWest should have offered Plaintiff a Sabbath-free guarantee in 2017. Plaintiff does not indicate he will go nearly this far at trial. Cassell merely argues that "although [he] did not demand a Sabbath free guarantee (as SkyWest contends) Horne's and Wahlen's work experience shows that even if he had it would still not have created an undue hardship [on SkyWest] as the 2016 accommodation would have been sufficient to allow [him] a Sabbath free schedule." ECF No. 123 at 6. Plaintiff is not attempting to introduce

---

[15] SkyWest attempts to argue that Horne or Wahlen's evidence is irrelevant because the relevant decisionmakers at SkyWest did not know that the two men were Seventh-day Adventists in 2017. The court is unpersuaded by this argument for two reasons. First, Cassell claims that Horne and Wahlen's testimony goes to *his* belief that he would not have to work on the Sabbath using the 2016 accommodations. SkyWest's knowledge of the two additional Seventh-day Adventists is irrelevant to this point. Second, Cassell presents evidence that he told SkyWest about Wahlen and Horne's experiences and that SkyWest never followed up on this information. ECF No. 123 at 8.

a new and confusing issue, he is merely producing evidence that tends to support his legal theory of the case.

The court must address one last issue relating to Wahlen. SkyWest offers new evidence of a phone call, both the recording itself and written evidence discussing it, in which Wahlen attempted to call off a flight in October 2022. ECF No. 107. In this call, Wahlen claimed that he could not work because he was fatigued. SkyWest seems to allege that Wahlen was using fatigue as an excuse to avoid working on the Sabbath. Cassell requests that the court exclude this evidence because it was previously undisclosed and because it misrepresents the true facts of the situation (allegedly Wahlen's call off for fatigue was authentic and, in fact, later approved by SkyWest). The court declines to exclude this evidence. First, under Federal Rule of Civil Procedure 26(a)(3)(B) parties must disclose their evidence at least 30 days before trial. Here, SkyWest provided the written evidence in question on January 5, 2023, when it filed this motion in limine. ECF No. 103-2. It also provided notice of conventional filing of the recorded evidence in question on January 6, 2023. ECF No. 107. At the time, the trial date was set for February 13, 2023. Thus, SkyWest's disclosure took place more than 30 days before trial and satisfies the requirements of Rule 26(a)(3)(B). Second, the evidence of the phone call in question is relevant for the same reason that Wahlen testimony is relevant—Wahlen's success or failure in avoiding working on the Sabbath is probative of whether or not Cassell was correct in believing that he could have avoided working on the Sabbath without a guarantee from SkyWest. Though this evidence may be misleading in a vacuum, Plaintiff can inform the jury of the context surrounding Wahlen's phone call. He is not helpless to address this new evidence. Thus, the court declines to exclude evidence related to the phone call between Wahlen and SkyWest.

**7.   Motion to Exclude Evidence Re Validity of the SkyWest Airlines Pilot Association, the Collective Bargaining Agreement, and the Bona Fide Seniority System**

Pursuant to Rules 401 and 403, SkyWest seeks to exclude testimony and argument (1) that the SAPA is not a valid collective bargaining representative, (2) that SkyWest's Collective Bargaining Agreement/Pilot Policy Manual ("CBA") with SAPA is invalid for that reason, and (3) that SkyWest does not have a bona fide seniority system governing pilot scheduling. While Plaintiff continues to dispute each of these claims, he asserts that he has no intention to make any argument or introduce any evidence on these issues at trial and does not believe that they are relevant. This is because neither party believes that the accommodations set forth in the 2016 Memorandum, and allegedly offered by SkyWest in 2017, violated either the seniority system or the CBA. As such, the court will exclude testimony and argument regarding these three issues unless a development at trial renders them relevant.[16]

**8.   Motion to Exclude Evidence Re Other Types of Employee Leave**

Pursuant to Rules 401 and 403, SkyWest seeks to exclude testimony and evidence related to leave it provides its pilots when they must miss a scheduled flight. Specifically, SkyWest wishes to exclude a spreadsheet that details pilot absences during their work hours. These absences are coded to indicate what type of leave a pilot used to cover their nonappearance, including leave required by the Family and Medical Leave Act, the Americans with Disabilities Act, the Uniformed Services Employment and Reemployment Rights Act, the Federal Aviation Regulations, and worker's compensation statutes. SkyWest argues that evidence of pilot leave is

---

[16] Plaintiff does not waive his right to challenge the validity of SAPA as a collective bargaining representative, that the CBA is invalid, and that SkyWest does not have a bona fide seniority system if SkyWest presents argument relating to such issues at trial. Because the court denies SkyWest's second motion in limine, it is possible that SkyWest will introduce these issues at trial. If SkyWest plans to do so, the court will require further briefing from Plaintiff on the validity of SAPA, the CBA, and the seniority system.

irrelevant to the material issues in this case. It also asserts that introducing this evidence would require the court to waste extensive time educating jurors on the laws entitling pilots to leave, sowing juror confusion. The court disagrees and declines to exclude the evidence in question. It does, however, order the parties to submit a jury instruction clarifying the distinction between statutory leave and other forms of personal emergency leave (such as leave taken for childcare crises and flat tires).

The spreadsheet evidence of pilot absences is clearly relevant. Plaintiff argues that the court should admit evidence regarding missed flights because it is probative of the material issue of whether offering Plaintiff an accommodation created an undue hardship for SkyWest. Cassell submits that the evidence indicates that pilots miss, on average, several flights a year and that SkyWest has a functional reserve pilot system to cover these absences to avoid harm to the company. Cassell argues that this supports his argument that SkyWest's reserve pilots could easily cover an occasional Sabbath flight in a scenario where Cassell could not use the 2016 accommodation to avoid every single Sabbath assignment. If Cassell successfully convinces the jury of this point, he could also convince the jury that allowing him to miss an occasional flight would not constitute an undue hardship for SkyWest.

Cassell also points out that the leave spreadsheet undermines SkyWest's argument that it would have incurred a significant financial burden to train Cassell that it would not have recouped because Cassell would have quit or been fired when he could not use the 2016 accommodation to avoid a Sabbath assignment. The spreadsheet indicates that, because the average SkyWest pilot regularly misses multiple flights every year with few consequences, Cassell would neither have been fired, nor been forced to quit if he missed one or two flights on the Sabbath. This spreadsheet evidence corroborates testimony from Aric Arnold, which indicates that, while SkyWest does

discipline pilots for missing flights, a single absence would not result in a pilot's termination. ECF No. 125-2 at 117:23-119:4.

Even if the evidence of leave is relevant, Defendant still argues that it has a high likelihood of confusing the jury and prejudicing SkyWest. It believes that Plaintiff will use this evidence to claim that Cassell's requests for religious leave should be treated the same as other forms of statutorily and regulatorily required leave. Essentially, SkyWest claims that "[i]t would be wholly inappropriate to allow Plaintiff to suggest to the jury that SkyWest must provide those who request religious accommodations with leave just as it does under these and similar leave laws." ECF No. 95 at 5. The court agrees that such an argument would be inappropriate. However, it also believes that a jury instruction clarifying this issue is the best way to balance admitting relevant evidence and avoiding prejudice. The parties should cooperate to produce an instruction explaining which types of leave are required by law, and which absences are more closely analogous to a hypothetical scenario where Plaintiff skips an assigned shift for an undisclosed reason, emergency or not. This will allow Plaintiff to submit his evidence, while protecting Defendant from misleading argumentation. If Cassell impermissibly uses this batch of evidence at trial to argue that Plaintiff should be entitled to religious leave just like those taking statutory leave, SkyWest may object, and the court will sustain the objection.

### 9. Motion to Exclude Evidence Re Punitive Damages

SkyWest seeks to exclude evidence and argument regarding punitive damages. While it purports to make this argument pursuant to Rules 401 and 403 of the Federal Rules of Evidence, its arguments are almost solely based on the notion that there is insufficient evidence to support an award of punitive damages.[17] As a result, the court treats this motion in limine as though it were

---

[17] In its motion SkyWest makes a short evidentiary argument referencing Rule 403. It claims that because Plaintiff has no chance of proving its punitive damages claim, it would be prejudicial to

a motion for summary. In deciding Defendant's motion, the court will "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008). Ultimately, the court declines to exclude either evidence or argument regarding punitive damages.

Under Title VII, a party may only seek punitive damages against an employer "who engaged in unlawful intentional discrimination," 42 U.S.C. § 1981a(a)(1), "with malice or with reckless indifference to the federally protected rights of an aggrieved individual," 42 U.S.C. § 1981a(b)(1). "[P]laintiffs face a 'formidable burden' when seeking punitive damages for employment discrimination," *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1035 (8th Cir. 2008) (quoting *Canny v. Dr. Pepper/Seven–Up Bottling Grp., Inc.*, 439 F.3d 894, 903 (8th Cir. 2006)), but proving reckless indifference "[does] not require a showing of egregious or outrageous conduct." *McInnis v. Fairfield Communities, Inc.* 458 F.3d 1129, 1136 (10th Cir. 2006). In fact, an award of punitive damages only requires "proof that the employer acted 'in the face of a perceived risk that its actions [would] violate federal law.'" *Id*. (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535-36 (1999). Still, "punitive damages are inappropriate if the employer was unaware of the federal prohibition, or if the plaintiff's underlying theory of discrimination was novel or poorly recognized, or if the employer reasonably believed that its discrimination satisfied a bona fide occupational defense." *Sturgill*, 512 F.3d at 1035 (citing *Kolstad*, 527 U.S. at 536). Moreover, an "employer may avoid vicarious punitive damages liability by showing that it made good faith efforts to comply with Title VII." *Id*.

---

put the issue before the jury and allow Plaintiff to present evidence on the matter. If the court rules that there is sufficient evidence for Cassell to support an award of punitive damages, it also must allow Plaintiff to put this issue before the jury and present any admissible evidence relevant to the question. To make any other decision is nonsensical. If the court were forced to exclude all prejudicial legal claims—even the valid ones—then it would simply lock all Plaintiffs out of court.

As an initial matter, SkyWest's motion to exclude evidence tending to support punitive damages faces significant difficulties because, so far as the court can tell, all of the evidence relevant to the issue of punitive damages is the same evidence that the court will have to admit in order to help the jury decide the basic discrimination claims in this case. The court will not exclude evidence supporting punitive damages that overlaps with these claims. If SkyWest was attempting to exclude evidence that was only relevant to punitive damages, e.g., evidence of SkyWest's revenues, the court would be more amendable to exclusion, but here, SkyWest specifies no such evidence. Even if SkyWest did seek to exclude specific evidence solely pertaining to punitive damages, the court would decline to exclude it because there are material factual disputes as to Cassell's punitive damages claim.

Defendant argues that the court cannot hold it liable for punitive damages because it denied Cassell's employment and offered him accommodations in good faith, meeting *Sturgill*'s requirements for safe harbor. 512 F.3d at 1035. To support this argument, SkyWest first claims that all parties (as well as this court) agree that it clearly offered Cassell reasonable accommodations. But this is not so. One of the central questions of this case is whether SkyWest actually offered Plaintiff the same reasonable accommodation that it provided in 2016. If it did not, then its 2017 offer of accommodation may not have been reasonable. Indeed, SkyWest observes that the ultimate rehiring decisionmaker, Glassey, decided not to hire Cassell only after reading interview notes indicating Cassell would not commit to a schedule that included the Sabbath. From SkyWest's perspective, it gave Plaintiff a fair shot at earning back his job but had no choice but to decline to hire him after he refused to commit to working on the Sabbath. In the company's mind, the fact that Cassell would not commit to working on the Sabbath, which might have created an undue hardship, is a valid reason for choosing not to rehire Plaintiff. But this begs

a major question of the case—did Cassell's failure to commit to working on the Sabbath really create an undue hardship? SkyWest also points out that rather than terminating Plaintiff for declining to show up for training during the Sabbath in 2016, it allowed him to resign and retain eligibility for re-hiring while simultaneously giving him the opportunity to train six-months later when the days were longer. Again, this is not slam dunk evidence of good faith. In fact, it cuts both ways—why send Plaintiff the message that he would be re-hired in six months to accommodate his religious needs and then renege on that promise even though there was little or no change in circumstance? Finally, SkyWest argues that it was reasonable for Glassey to decline to rehire a pilot who had already refused to work his schedule six-months prior, even when given reasonable accommodations. While this is some evidence that SkyWest acted in good faith, it certainly does not close to door to Plaintiff bringing a viable argument for punitive damages.

In rejoinder, Cassell cites a substantial amount of evidence supporting his claim that SkyWest acted either "with malice or with reckless indifference to" his federally protected rights. 42 U.S.C. § 1981a(b)(1). As an initial matter, Plaintiff can show that SkyWest unquestionably knew that it had a legal obligation to accommodate his religious practices. The most convincing support for this proposition is SkyWest's actions regarding Plaintiff's request for accommodations in 2016. That year, Cassell submitted a request for accommodations, SkyWest considered the request, it returned with what it considered a reasonable accommodation, and then the two parties memorialized that agreement in the 2016 Memorandum. ECF No. 87-1. Moreover, Plaintiff presents evidence that SkyWest made religious accommodations for an Orthodox Jewish pilot who could not work the Sabbath, Muslim employees who needed time to pray, and a Christian employee who wished to wear a skirt rather than uniform pants. ECF No. 126-2 at 145-46. In short,

SkyWest knew that federal law required it to accommodate Cassell's religious needs and the religious needs of others who requested accommodations.

Next, Cassell adduces evidence tending to show that SkyWest refused to abide by the accommodation it had offered Cassell in 2016, which could constitute a reckless indifference to its obligation to accommodate. First, Plaintiff argues that the fact that SkyWest granted Cassell an accommodation in 2016, counseled him to resign so that he could be re-hired and trained when the days were longer, and then refused to offer the same accommodations in 2017, is evidence of reckless indifference to its responsibilities under federal law. A jury could find that because SkyWest knew the accommodation was viable and did not pose an undue burden, yet refused to reoffer it though it had practically promised to, SkyWest was acting with reckless or intentional disregard of Cassell's rights.

Second, Plaintiff argues that Glassey knew that SkyWest had an obligation to accommodate Cassell but intentionally and purposely chose not to do so. Coy Bryant ("Bryant"), who was in SkyWest's employee relations department and was involved in the 2016 accommodations negotiation, had "explained [to those involved in the hiring process] how he could make it work and how we can't discriminate based on religion, how we've hired others in the same situation, etc, etc." ECF No. 126-3. Bryant told Glassey that "[b]ased on the [2016 accommodations] memo Employee Relations recommends we allow Shane Cassell an opportunity." ECF No. 126-5. A jury could well find that the individual who had the final say in whether or not to hire Cassell was advised by SkyWest's employee relations department that federal law required that he hire Cassell and that he willfully ignored this counseling. According to Plaintiff's interpretation of events, Glassey decided that "[Cassell] stated his insubordination before he even started" and refused to hire him. ECF No. 126-6 at 39.

Third, Plaintiff provides substantial evidence that SkyWest both made little effort to determine if it had the ability to accommodate Cassell's Sabbath absences and ignored evidence that it could accommodate such absences. Specifically, Plaintiff points out that Cassell told SkyWest that it had Seventh-day Adventist employees who had successfully avoided working on the Sabbath using the basic scheduling tools at their disposal. SkyWest allegedly never followed up on this information by asking Cassell who those individuals were and contacting them to see if they had, indeed, scheduled around the Sabbath. This evidence could indicate that SkyWest was, at the very least, recklessly indifferent to Plaintiff's rights. Plaintiff cites more evidence that could indicate SkyWest acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual," but the facts outlined above are sufficient to convince the court that SkyWest has not definitely shown that it acted in good faith. Thus, the court denies Defendant's request to bar Plaintiff's request for punitive damages. 42 U.S.C. § 1981a(b)(1).

## II.   PLAINTIFF'S MOTIONS IN LIMINE

### 2.   Motion to Exclude Testimony that SkyWest Would not Have Been Able to Cover a Sabbath Flight

Pursuant to Rule 401 and 403, Cassell seeks to exclude testimony and argument that SkyWest would not have been able to cover all of Plaintiff's potential Sabbath absences by using its reserve pilot system. It also seeks to exclude evidence that covering a Sabbath absence using the reserve pilot system would have been an undue hardship on SkyWest. Cassell argues that this testimony, if elicited, would be completely speculative and, thus, irrelevant. Even if it is relevant, Cassell claims that this testimony would confuse and mislead the jury because it could lead jurors to believe they can rely on speculative evidence to render a verdict. The court declines to exclude this testimony.

Cassell predicts that SkyWest will attempt to argue that that, during the period from 2017 to 2019, there were Sabbaths when first officers on reserve duty in Detroit might not have been able to fill in for a flight to which Cassell was assigned. Allegedly, SkyWest will make this claim to show that accommodating Plaintiff would subject it to an undue hardship. If SkyWest pursues this argument, Cassell believes that the evidence it will use to support it is purely speculative and, thus, must be excluded as irrelevant because "[a]n employer . . . cannot rely merely on speculation" to prove undue hardship. *Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481, 1490 (10th Cir. 1989).

The court sees no indication that SkyWest's evidence is purely speculative. In fact, Defendant offers several pieces of non-speculative evidence suggesting that it does not always have reserve pilots available to fill in for missing pilots and must occasionally cancel flights in Detroit. For instance, Spagnolo's deposition testimony indicates that the Detroit hub experienced moments where "there wasn't [sic] enough pilots to meet the reserve lines that we're trying to get." ECF No. 117-1, at 66:7-19. Additionally, Spencer testified at deposition that "Yes," SkyWest does "run out of reserve pilots."  ECF No. 117-5 at 50:14-16. Moreover, Glassey's deposition testimony notes that "[r]eserves are the last line of defense to prevent flight cancellations . . . . If there are multiple absences, the reserve pool can be used up and then we don't have reserves." ECF No. 101 at 81:2-19. This evidence is not speculative. Rather, it indicates that there is a real risk that Cassell's Sabbath absences could have resulted in a cancelled flight.

Still, Plaintiff argues that two pieces of testimony prove that any argument regarding the availability of reserves is speculative. First, he posits that testimony from Spencer will indicate that SkyWest had no way of predicting whether it would be able to cover a Sabbath flight without undue hardship. When Spencer was asked in her deposition if Cassell could have avoided working on the Sabbath using the bidding and post-bidding tools, and be covered by reserve pilots, she

responded that "it would be speculation if he could have held it or not. It's all based on if he's --
if he's trying to drop a trip, it's all based on if there were resources available to cover his trip."
ECF No. 99-1 at 71:17-21. Cassell argues that Spencer herself *admitted* that it would be
speculation to guess if Cassell's hypothetical flight would be covered by reserve pilots. This may
be true, but Plaintiff ignores the rest of Spencer's testimony. Spencer testified that whether or not
Plaintiff could avoid working on the Sabbath is based on the resources a given hub has at its
disposal. *Id*. Additionally, she points out that the likelihood of whether Plaintiff would be covered
on the Sabbath also depends on "the domicile and just sort of depend on what's going on in any
one week in that domicile." *Id*. at 73:14-20. In sum, Spencer's testimony offers multiple factors
one can use to determine if Plaintiff would be covered if he missed a Sabbath flight. Such evidence,
and the reasonable inferences to be drawn therefrom, is a far cry from merely asking the jury to
speculate.

Second, Cassell argues that testimony from Justin Esplin, the individual who compiled and
analyzed data showing the availability of reserve pilots on different days and at different hubs, will
indicate that, though his data analysis showed there was always a reserve pilot *stationed* in Detroit
on a Friday-Saturday, it was impossible to determine if reserve pilots were able to *fly* a given shift
on any given Sabbath. ECF No. 99-2 at 32:1-15. Plaintiff claims that Esplin will state that it is not
possible to determine if flights originating out of Detroit were cancelled because of a lack of
reserve pilots. *Id*. at 47:1-10. Cassell, therefore concludes that SkyWest's claim that there might
have been some Sabbaths when no reserves were available is speculative. But the evidentiary
burden is not complete certainty. Juries are routinely asked to reach conclusions based on logic,
common sense, and inferences from the available evidence. Esplin's potential testimony does not
negate the fact that SkyWest has produced evidence that it may not have been able to cover one of

Cassell's Sabbath flights. Ultimately, the jury will have to weigh Esplin's testimony against other testimony and evidence that SkyWest produces. *See Read v. Oklahoma Flintrock Prod.*, LLP, No. 21-CV-316-JFJ, 2022 WL 17820158, at *1 (N.D. Okla. Dec. 20, 2022) (quotation omitted) (a "motion in limine should not be used to resolve factual disputes or weigh evidence.").

### 3. Motion to Exclude Testimony About Alleged Violation of the Collective Bargaining Agreement

Pursuant to Rules 401 and 403, Cassell seeks to exclude testimony and argument that accommodating Cassell's religious beliefs would have violated the seniority system or the CBA by giving him preferential bidding rights. The court agrees to exclude any testimony and argumentation pertaining to this issue.

At summary judgment, SkyWest argued that accommodating Cassell's religious beliefs by providing Plaintiff a guaranteed Sabbath-free schedule would violate the CBA and seniority system, thereby creating an undue hardship for the company. Worrying that SkyWest will repeat this argument at trial, Plaintiff argues that it is irrelevant because there is no dispute that the accommodation SkyWest allegedly offered Cassell in 2017 violated the CBA and seniority system. SkyWest agrees that this testimony and argument is irrelevant for the same reason.[18] Because both parties do not believe the evidence regarding the CBA is relevant, the court grants Plaintiff's motion to exclude.

---

[18] Defendant makes one caveat. If the reasonableness of Cassell's "preferred accommodation," a guaranteed Sabbath-free schedule, becomes an issue at trial, SkyWest argues that it should be allowed to present testimony and argument about the CBA and seniority system. But Cassell maintains that he never demanded a guarantee of a Sabbath-free schedule. ECF No. 63 at 10 n.4. Indeed, Cassell acknowledged that "SkyWest cannot guarantee that I will be provided a schedule that will always allow me to observe my beliefs." ECF No. 48-1, at 17.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendant's motions numbered one, two, four, five, six, eight, and nine, GRANTS Defendant's motion numbered seven, DENIES Plaintiff's motion numbered two, and GRANTS Plaintiff's motion numbered three.


DATED February 3, 2023


BY THE COURT

_____

Jill N. Parrish
United States District Court Judge